Opinion of the court delivered by
Judge Catron.
Joel S. Enloe was sheriff and collector of Obion county.
Marr sued Enloe in trover, for a sack of coffee, which Enloe siezed as sheriff and collector of the State and county taxes, of Obion county for the year 1828, for an alleged balance due by Marr of his county levy. The parties agreed to the following facts. That at the January _ session 1828 of Obion county court, a majority of the justices proceeded to lay or assess, the following tax for the year 1828, viz:—
Contingent tax on each 100 acres of land, - - 181 cts.
Jury tax on the same,.181
Public building tax on the same, - - 181-
Navigation tax on the same,.12k
County tax assessed on each 100 acres for 1828 681-
Marr gave in for taxation for that year, in the county of Obion, 9626 acres. The State tax of 181 cents per hundred acres added to the above made the tax 87¿ cents on each hundred acres, and Marr’s taxes amounted to the sum of $84 25; of this sum he had paid $66 21 to the sheriff, and refused to pay any more. The sheriff claimed $18 04, as abalance due on the tax list in his hands, levied upon a sack of coffee, and sold it to satisfy such *453 balance. It was also admitted, that the sale of the lots in the county town, had produced money enough to erect the public buildings contracted for at that time by the county court. Upon this state of facts, the circuit court declared the defendant justified, by virtue of the unsatisfied tax list, to seize the plaintiffs goods and sell them, to satisfy the balance due, and rendered judgment for him, and that plaintiff pay the costs — from which he prosecuted his appeal in error to this court.
The foregoing taxes were assessed by the county court, by virtue of the act of 1827, ch. 49, sec. 1, which provides “that the courts of pleas and quarter sessions, in the several counties in this State, a majority of twenty-five of the acting justices being present, shall at the first court in each and every year, levy a tax to meet the current ex-pences of their county for the ensuing year, upon all polls and property subject to taxation by the laws of this State.”
It is contended for Marr, that that part of the act of 1827, conferring unlimited powers of taxation upon the county courts, is unconstitutional and void, because it vests in the justices legislative authority upon a subject j; of the most vital importance to the citizens of every go- !l vernment, that of talcing from them their property by ■: way of taxation, not through their representatives, who . are responsible and dare not oppress them, but by a few individuals in each county, holding permanent offices and who are wholly irresponsible to the people whom they oppress with exorbitant burthens — acting without control as to the amount of tax imposed and collected, and almost equally so in the mode of its expenditure. That if the county court can tax the citizens one dollar each year on the hundred acres of land, it can with equal claims to power, tax each hundred acres $¡100, single year bankrupt every land holder, at least, er citizens, whose lands are generally of an infe\ lity- _ _ h0 9
_ _ The constitution declares “the legislative authority of this State shall be vested in fhe General Assembly *454 shall consist of Senate and House of Representatives, dependent on the people.” Art. 1, sec. I.
Js taxing the people an act of legislation ? That the taxing power belongs to the legislature, — and that exclusively, and is, if not the most important, at least of equal magnitude, with any power entrusted by the constitution to the General Assembly, — is a truism, never doubted or denied in Tennessee! Can this constitutional right, by an act of Assembly, be vested in a few individuals in each county, who are not dependent on the people, to tax without limit and even spend at pleasure, without responsibility and without control? Such are unfortunately the powers attempted to be conferred by the act of 1827. The right to tax themselves through their Representatives, in General Assembly, is a constitutional right in the people. Representation and taxation are of necessity in our Government inseparable, as they must be in every free country. Whenever the people are oppressed and bowed down with ruinous taxes, imposed without their consent, their fancied freedom is an idle delusion, and poverty and misery will as certainly overtake them in Tennessee, as under the sway of an Asiatic Prince, or Spanish King, whose will is law, and whose exertions are limited alone by his desires. Our Fathers fought, conquered, and separated from Great Britain to poor purpose, to preserve the principle, “that taxation without representation was tyranny,” if we are at this short day compelled to submit to its exercise in practice, by a few individuals in each county. In truth, the preservation of this principiéis the chief corner stone, on which our political fabric rests; take it away, and our Government is not worth preserving. It has been truly inquired of us, what limit to exactions is imposed by the act of 1827, in the county courts? We answer none. They may tax every acre of land in their respective counties to its full value, and if the tax is not paid, cause the land to be sold and bought in by the sheriff for the use of schools, if there be no other bidders.
Until county courts by its order (clearly amounting to *455 a legislative act,) imposes the tax, the people have no knowledge what they have to pay; nor have they any knowledge afforded them, even by the order fixing the tax, to what end it is to be applied, save that the act tells us it is for county purposes. That the act of 1827 was passed by the legislature with good intentions, we- do not doubt, but that it is unwise as well as unconstitutional, its execution in this district has tested. Where the whole lands, mostly in the forest, and a very great portion of them poor, have been taxed under its sanction, at an average rate of about one dollar on the hundred acres.* And what aggravates the affliction is, that by law, the people are kept ignorant how the money drawn from them in lumping sums, without specified objects, is appropriated— the same hand may enforce extravagantly, and dishonestly squander, without being the subject of legal enquiry. That such powers should be abused, is no subject of wonder. That the county court of Obion in 1828, with a population of a few hundred, needed county revenue to the amount of 681 cents on each hundred acres of land, with a tax on goods and polls, no man believes. As the population increases the taxes will increase, as has been verified by the increase, in succeeding years to 1828. At what point these county burthens will stop, cannot be foreseen. We speak of this particular county court, because its act appears in record, not that it has taxed more extravagantly than others. That taxing uncultivated lands, worth very low prices, at one dollar to the hundred acres each year, is an oppressive tax, it is useless to disguise, or attempt to palliate. No new country can for a series of years, meet such exactions without great afflictions. The policy that induced exorbitant taxes to be imposed by the county courts of this district, is a part of its history, and has never been concealed. The object was, first, to compel owners of land, to sell; and second, to fill the county tlea'suries extravagantly, at the *456 expense of non-resident and other land holders. The to sell has been produced, but unfortunately for the country, emigrants are unwilling to buy where they see taxes imposed, great in amount, and at the discretion of the county court, composed of a few magistrates; men see and feel, that here as elsewhere, when the few tax the many, oppression is the consequence, and act accordingly. They settle on the public lands, or go further.— No arguments are so conclusive as facts. The practical effects of a law most aptly test its true character — some of these we have felt it our duty frankly and freely to state; believing, that the rights of the people and the unimpaired preservation of our institutions, require it at our hands. Had the tax been $100 on the hundred acres, instead of one dollar, all would concede, from this singular fact, that the act was unconstitutional; the principle is the same; there is no limit to its abuse. It is next contended for the plaintiff, that the legislature cannot tax any one hundred acres of land,higher than another, — that giving the county courts power to fix the amount of tax at descretion will necessarily result in a violation of the constitution, and therefore the act of 1827 is void. The constitution declares that “all lands liable to taxation in this State, held by deed, grant or entry, shall be taxed equal and uniform, in such manner that no one hundred acres shall be taxed higher than another. It is suggested for the defendant Enloe, that this section of the constitution only refers to State taxes, contra distinguished from county taxes, and that the latter need not be equal and uniform; that the practice had been in North Carolina previous to the formation of the constitution, for the. county court to tax unequally, which practice was recognized by the adoption of the laws of North Carolina.
No doubt the abuses of the county courts, when in the exercise of the taxing power oí North Carolina, was one of the reasons why the foregoing clause was inserted in the. constitution. Few of the lands in Tennessee in 179ÍT were cultivated, and the most fertile sold at very low prices; hence there was little of seeming impropriety in *457 taxing every acre alike. The interest of the non-resident land owners, who were to pay a great proportion of the taxes, had much weight, no doubt, with the convention.— They wished to put it beyond the power of the legislature to tax their lands higher than those of the citizens. To the foregoing provision there was no good reason to object, in the then country, but the increased value of lands in certain sections, has rendered this restriction in the taxing power so grossly absurd, as to produce attempts to violate it by the legislature, by authorizing the county courts to tax at one rate in one county, and at another in the next, and ordering the charges of government to be paid principally out of the county treasuries. It never entered the mind of the legislature, or county courts, that the above clause did not equally apply to county and State taxes. The county tax has always been uniform and by the acre, throughout the county. If the constitutiondid not apply to the assessment of county revenue, why not levy it according to the value? Did the constitution provide that the lands lying in each county should be taxed “equal and uniform,” then the partial laws taxing the lands in one county higher than in another, would be well enough. But when the paramount law, prescribes to the legislature, the creature of the constitution, limits to the taxing power on lands, so unquestionably precise, as to leave no room for evasion, or escape by construction, the courts must do their duty, and pronounce all laws taxing any one hundred acres within the State, higher than any other hundred acres, void.
It is not assumed for defendant that the legislature can tax the lands of one county at one rate, and those of another at a different, but that by act of Assembly, the county courts of the respective counties may be authorized to do this for county purposes. The legislature have no power to tax unequally; it cannot escape observation, that that body can communicate none to the county courts. The principal has no authority; of course can transfer none to the agent. The constitution makes no distinction — it refers to all taxation on lands, collected *458 by legislative authority. Were the-construction conten- •,■,/, - _ , dea lor adopted, tho legislature might direct the whole expenses of the government to be paid through the county treasuries, as is now the case to a great extent — when the constitutional restriction would be a dead letter. In this event, the county courts would be the taxing power, and no two tracts of land lying in different counties taxed equal and uniform, unless it should be the result of accident. All taxes are substantially the same — money levied upon property and polls for the support of government — names of taxes, referring to their designed uses, do not lighten the burthen of him who pays.
Such is the constitution of Tennessee, which it is our sworn duty to support. It is an appalling absurdity truly, that anhundred acres of land, worth fifty cents an acre, should pay one dollar tax, and that another hundred acres, worth fifty dollars the acre should pay the same amount of tax; we wish it were otherwise, but it is for the people to alter the constitution, if desirable, — not the legislature.
Having disposed of the act of 1827, we will next en-quire what portion of the taxes, ordered to be collected by the county court of Obion, from the plaintiff, was subject to be imposed upon his property by the existing laws, not subject to constitutional objection.
The act of 1797, ch. 3, authorizes the respective county courts to levy and collect annually, a tax of 124 cents on every hundred acres of land for the contingent expenses of the county. The county court of Obion taxed the plaintiff’s land 181 cents on the hundred acres, — of course Qi cents more than is allowed by law. For so much the order is void.
The 2d charge is 18} for a building tax. The act of 1809, ch. 81, authorizes the charge; although, we fear from the facts in the record, this item is an abuse, and not intended to be appropriated to the purposes of building; of this, however, it is notour province to judge.— The foregoing appropriations are for specified objects, and collected by virtue of general laws, taxing all lands equally, although the county courts may collect less *459 than the limit, they have the right to receive the highest sum, in which the less is necessarily included. This practice of collecting county taxes has so long prevailed, and received the sanction of the various departments of gov-erement as not to be fairly open to constitutional exception at this day, if so originally.
The 3d item levied on plaintiff’s lands, was, 181 cents as a jury tax. 4 This was collected by virtue of - the act of 1807, ch. 7, and 1809, ch. 49, sec. 15. The number of jurors, their time of service, and daily compensation are fixed, and the laws general, still the county courts assess the amount of tax, and it may be impossible to preserve uniformity; but on the validity of these laws we will not undertake now to determine. The matter is of vast importance to the State, and we are not satisfied either way — the cause can be determined without it; the practice unobjected to for twenty-three years, under these statutes, must involve itself mainly in their construction.
4th. Plaintiff’s lands are charged 12¿ on each hundred acres as a navigation tax. This was assessed by thé act of 1824, cb. 128. It is a partial law, authorizing the county courts of 10 of the counties in the Western District, Obion being one, to lay a tax of 124 cents on each 100 acres, for five years, to be applied in clearing out the streams in the counties respectively. This law imposes upon every hundred acres lying in the ten counties to which it applies, 124 cents more than on any hundred in other counties. The tax is unequal. — The act imposing it is obnoxious to the constitution, and void. Hence the county court of Obion had no lawful authority to assess 6i cents of the contingent tax — or the navigation tax— making 181 cents on the hundred acres. These items appear as part of the tax list, and amount to $>18 20. Marr had paid all that was lawfully due, and some cents over. The order to collect $84 25 made by the county court, was made without power or jurisdiction in that tribunal, and communicated no authority to the sheriff to seize the property of Marr. We therefore reverse the judgment of the circuit court, and order it to be entered on the case agreed for the plaintiff to the value of the coffee.

In the county of il’Nairy they are for the year 1830 ¡¡¡2 87| the 100 acres.